196 N.J. Super. 323 (1984)
482 A.2d 523
CLEARVIEW GARDENS ASSOCIATES, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF PARSIPPANY-TROY HILLS, DEFENDANT-RESPONDENT.
RIVERSIDE ESTATES, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF PARSIPPANY-TROY HILLS, DEFENDANT-RESPONDENT.
PARSIPPANY HILLS ASSOCIATES, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF PARSIPPANY-TROY HILLS, DEFENDANT-RESPONDENT.
D.H. OVERMYER, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF WOODBRIDGE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1984.
Decided September 28, 1984.
*325 Before Judges McELROY, DREIER and SHEBELL.
Steven R. Irwin argued the cause for appellants (Mandelbaum & Mandelbaum, attorneys; Steven R. Irwin, on the brief).
Jane M. Coviello argued the cause for respondent Township of Parsippany-Troy Hills (Villoresi & Jansen, attorneys; Jane M. Coviello, on the brief).
Burton J. Jacowitz argued the cause for respondent Township of Woodbridge (Arthur W. Burgess, attorney; Joseph R. Bulman, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs appeal from orders of the Tax Court denying plaintiffs' motions for Freeze Act application in the Clearview Gardens Associates, Riverside Estates and Parsippany Hills Associates cases (hereinafter called the "Parsippany-Troy Hills" matters) which were decided by a Tax Court judge by orders dated December 9, 1983, without opinion or oral argument. The D.H. Overmyer matters, concerning six parcels in the Township of Woodbridge, are the subject of a single order dated April 19, 1984 denying all motions for Freeze Act application for the reasons set forth in the trial judge's oral decision. Plaintiffs' attorney asserts that different practices prevail among the Tax Court judges, some accepting an application for Freeze Act relief, without further documentation, and others requiring certifications as to value, etc. An appellate opinion is thus necessary to restore uniformity to this area of the law.
In the Parsippany-Troy Hills cases the following corrected assessments were ordered by judgment pursuant to settlement as to the tax year 1980, and the 1982 tax assessments were placed on the subject property as follows:

*326
 Clearview Garden Associates
 Block 15, Lot 26 - Mt. Pleasant Avenue
 Original Assessment : $360,000
 Tax Court Judgment : $251,437
 Date of Entry : July 16, 1981
 1982 Assessment : $266,800
 Parsippany Hills Associates
 Block 388, Lot 7 - Parsippany Road
 Original Assessment : $1,400,000
 Tax Court Judgment : $ 971,535
 Date of Entry : June 23, 1981
 1982 Assessment : $1,052,000
 Riverside Estates
 Block 15, Lot 25 Sec. 1 - Route 10
 Original Assessment : $1,312,000
 Tax Court Judgment : $1,000,000
 Date of Entry : September 22, 1981
 1982 Assessment : $1,031,300
 Riverside Estates
 Block 15, Lot 25 Sec. 2 - Route 10
 Original Assessment : $7,637,200
 Tax Court Judgment : $5,622,500
 Date of Entry : September 22, 1981
 1982 Assessment : $6,233,700

In the D.H. Overmyer matters settlement judgments were issued by the Tax Court for the 1981 tax year, but the 1982 assessments restored each subject property in Woodbridge to its prejudgment valuation as follows:

 Block 912, Lot 19B - Randolph Avenue
 Original Assessment : $409,700
 Tax Court Judgment : $374,100
 Date of Entry : October 6, 1982
 1982 Assessment : $409,700
 Block 912, Lot 22 - Engelhard Avenue
 Original Assessment : $ 776,800
 Tax Court Judgment : $ 704,400
 Date of Entry : January 26, 1983
 1982 Assessment : $ 776,800

*327
 Block 912, Lot 20B - Engelhard Avenue
 Original Assessment : $ 801,400
 Tax Court Judgment : $ 729,000
 Date of Entry : January 26, 1983
 1982 Assessment : $ 801,400
 Block 912, Lot 20A - Engelhard Avenue
 Original Assessment : $ 843,300
 Tax Court Judgment : $ 770,900
 Date of Entry : January 26, 1983
 1982 Assessment : $ 843,300
 Block 912, Lot 19A - Randolph Avenue
 Original Assessment : $ 910,800
 Tax Court Judgment : $ 838,400
 Date of Entry : January 26, 1983
 1982 Assessment : $ 910,800
 Block 912, Lot 16 - Interior
 Original Assessment : $1,210,000
 Tax Court Judgment : $1,101,900
 Date of Entry : January 26, 1983
 1982 Assessment : $1,210,000

On or about October 24, 1983 plaintiffs in the Parsippany-Troy Hills cases filed motions with the Tax Court seeking Freeze Act judgments to reduce the 1982 assessment on the subject property to the 1980 level. In January 1984 plaintiffs in the Woodbridge cases made motions to reduce the valuation to the 1981 level. These motions were denied and this appeal ensued. The three Parsippany-Troy Hills cases had been heard on a consolidated basis, and by separate order dated August 8, 1984 this court consolidated the Woodbridge case with them.
In the Parsippany-Troy Hills cases the 1980 settlements were entered as judgments prior to October 1, 1981, the valuation date for 1982 assessments. In the D.H. Overmyer case the judgments were all entered after October 1, 1982, the valuation date for the 1983 assessments.
The basic issue in all of these cases is whether the Freeze Act is to be applied, either automatically or by motion of the taxpayer, without taxpayer proof of no intervening increase *328 in value or general revaluation. The Freeze Act, N.J.S.A. 54:2-43 (current version at 54:51A-8 (L. 1983, c. 45)), reads as follows:
Where a judgment final has been rendered by the tax court involving real property such judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to such proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where such changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all property within the district has been put into effect.
The Freeze Act's purpose was explained in Newark v. Fischer, 8 N.J. 191, 199-200 (1951):
The evil which the "freeze" statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board....
The Freeze Act applies both to judgments entered upon an adjudication and to consent judgments. South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 489 (1983). The Supreme Court also noted in South Plainfield that "[w]hen a case is settled, the Freeze Act may be invoked at the exclusive option of the taxpayer, not the municipality." Id. at 491. The wording of the Freeze Act shows that its application is mandatory and self-executing. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166-168 (1954).
Each tax assessor in this State is bound to assess the property at its fair market value as of October 1st of each year (N.J.S.A. 54:4-23), unless the statutory law or a final judgment of a county board or court of competent jurisdiction directs otherwise. The Tax Court Freeze Act quoted above and the County Board Freeze Act (N.J.S.A. 54:3-26) impose a different duty *329 upon the assessor.[1] The statutes specifically provide that where there has been a change in value occurring after the assessment date, the Freeze Act valuations may be modified where a complaint is filed alleging such change or if there is a general revaluation of real property in the community.
If the final judgment is rendered prior to the assessing date, the assessor should note the change for the two freeze years as well as for the year adjudicated by the court. If, however, the final judgment is rendered after the assessing date, and the assessor has followed the mandate of N.J.S.A. 54:4-23, listing the properties at his higher assessed value, some action need be taken by the taxpayer to effect a change in this assessment. As noted by Judge Evers in Curtiss Wright Corp. v. Wood-Ridge, "[i]n such instances it is necessary for the property owner to affirmatively seek the application of the freeze act." 4 N.J. Tax at 73. Once this information is brought to the assessor's attention, the mandatory and self-executing nature of the Freeze Act requires the assessor to comply. The taxpayer need not submit any affidavits concerning the lack of change in value or that there has been no general revaluation.
We note that in the Parsippany-Troy Hills cases, the judgment preceded the valuation date. In the Woodbridge cases, each of the judgments was entered after October 1st, but plaintiff applied for Freeze Act protection. The municipalities have not urged that a general revaluation has occurred in 1982, nor has either municipality filed an appeal alleging a change in *330 value for the particular year. See Hudson Terrace Apts. v. Fort Lee, 2 N.J. Tax 457, 461-463 (Tax Ct. 1981), rev'd on other grounds, 191 N.J. Super. 489 (App.Div. 1982).
If the municipality files a complaint to avoid the Freeze Act valuation, alleging either a change in value or a general revaluation, the issue will be determined by a county board or the tax court, or at the appellate court level; but it is the municipality which must urge the departure from the Freeze Act mandate and carry the burden of proof as to such change. One of the reasons the Freeze Act was enacted was to prevent a taxpayer from being subjected to annual expenses to uphold an adjudicated valuation. The statute would fail in its purpose if the taxpayer were required to retain experts to negate the change in value and attorneys to present the issue in cases where the taxpayer has already prevailed. Subject to the stated exceptions, the Freeze Act dictates two year respite from valuation litigation.
Parsippany-Troy Hills has urged that the filing of the appeals for the years covered by the Freeze Act constituted an election of remedies and that the taxpayers were precluded by such action from seeking Freeze Act protection. We disagree with this conclusion for the following reasons: First, the statute provides for no such defense to a municipality; second, the Freeze Act application is based upon different facts than is an application for a reduced valuation. The two remedies can exist in the same case. The mandatory and self-executing nature of the Freeze Act establishes the assessment for the two Freeze Act years. If a taxpayer determines that it wishes to seek a lower valuation by way of appeal it may open itself to a claim by the municipality that a higher assessment is, in fact, warranted. Tp. of Wayne v. Robbie's, Inc., 118 N.J. Super. 129, 135 (App.Div.), certif. den., 60 N.J. 351 (1972). The burden of proof would be upon each of the parties to demonstrate that the assessment should be respectively lowered or raised. If both fail in discharging this burden, the Freeze Act valuation, *331 mandated by statute, would remain effective. This situation should be distinguished from that in Murnick v. Asbury Park, 5 N.J. Tax 406, 413-414 (Tax Ct.), aff'd o.b. 193 N.J. Super. 1 (App.Div. 1983) relied upon by the municipalities in the Parsippany-Troy Hills cases. There the principle was established that there is an election of remedies when the taxpayer's appeal from a potential freeze year's valuation is fully litigated before the base year's assessment has become a "judgment final."[2] That is not the situation presented in the Parsippany-Troy Hills cases.
The election of remedy contention must fail for a third reason. Appeals by both the municipality and taxpayer are required to be filed by August 15th of the tax year. A taxpayer who determines that his valuation should be the subject of further reduction based upon a change in value may well be willing to accept a slightly higher Freeze Act assessment, but not a substantially increased assessment which might be entered as a result of an appeal by the municipality. Since no authority exists to enable the taxpayer to urge a lower valuation in the absence of a complaint, and since the municipality might file a last minute appeal (F.M.C. Stores Co. v. Boro. of Morris Plains, 195 N.J. Super. 373, 378-83 (App.Div. 1984)), the taxpayer might well choose to file a defensive or protective appeal, although it might be withdrawn later. Curtiss Wright Corp. v. Wood-Ridge, 4 N.J. Tax at 82-83. Also, because the municipality can reassess if there has been no "judgment final," with respect to an earlier year, the taxpayer must protect itself. The very real possibilities exist that it may not prevail as to any earlier year on appeal, or even that a favorable *332 valuation may be reversed if then on appeal. The taxpayer should not lose its statutory protection by filing an appeal. The election is made only when the taxpayer seeks to enter judgment. Murnick v. Asbury Park, 5 N.J. Tax at 414.
In each of the cases before us N.J.S.A. 54:2-43 requires the application of the Freeze Act. We, therefore, reverse the orders denying Freeze Act application and remand the matters to the Tax Court for the entry of judgments granting the Freeze Act applications consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The Freeze Act applicable to the cases before this court, N.J.S.A. 54:2-43, as amended by L. 1979, c. 114, § 9, uses the terminology "judgment final" to express the condition upon which the Freeze Act becomes effective. The Court in Curtiss Wright Corp. v. Wood-Ridge, 4 N.J. Tax, 68, 73 at fn. 4 (Tax Ct. 1982) notes that "judgment final ... is not to be equated with `final judgment'" since it incorporates the running of any applicable time for appeal. The Legislature, however, in recodifying N.J.S.A. 54:2-43 in N.J.S.A. 54:51A-8 (L. 1983, c. 45, effective January 28, 1983), abandoned the "judgment final" terminology. The present statute bases Freeze Act relief upon the rendering of a "final judgment."
[2] As was noted earlier in footnote 1, the Legislature has amended the Tax Court Freeze Act to substitute the words "final judgment" for "judgment final" as the enabling event for imposition of Freeze Act protection. Issues, such as the one before us today, might well be avoided if a final judgment triggers the Freeze Act protection, subject to later amendment if the judgment is overturned on appeal. Such a result must await the adjudication of the issue in an appropriate case implicating the revised terminology.