LASSER, P.J.T.C.
Taxpayers have moved for application of the Freeze Act, N.J.S.A. 54:51A-8, to judgments entered by the Tax Court for the year 1987 on three upper-level parcels of the Headquarters Plaza, Morristown, Lots 1.04, 1.05 and 1.06 in Block 4901. The motions on Lots 1.04 and 1.05 seek application of the Freeze Act for 1988, and the motion on Lot 1.06 seeks Freeze Act application for the years 1988 and 1989.
In 1987 a November 12, 1979 tax abatement agreement between Morristown and the developers of the Headquarters Plaza project was amended to grant tax exemption to five upper-level parcels. The 1979 agreement had granted tax abatement for 25 years to the project’s lower level parking garage only, pursuant to N.J.S.A. 40:55C-92. The amendment was challenged by Morris Township because the township and Morristown are in the same regional school district, and Morris Township alleged that its contribution to the regional school district was increased as a result of the removal of these five parcels from Morristown’s tax rolls. As a part of its challenge, Morris Township contested the tax exemption granted these five parcels for 1988.[1]
In 1987 the Headquarters Plaza project consisted of five separately owned and assessed parcels atop the lower-level multi-level parking garage. Lot 1.01, owned by LF Associates, is the 11-story East Office Building; Lot 1.03, owned by Third Roc-Jersey Associates, is the 11-story West Office Building; Lot 1.04, owned by Second Roc-Jersey Associates, is the shopping mall; Lot 1.05, owned by Fifth Roc-Jersey Associates, is the Headquarters Plaza Hotel, and Lot 1.06, owned by Fourth Roc-Jersey Associates, is the 12-story North Office Building, health club and theaters. The total 1987 assessment on these five upper-level parcels was $105,970,800.
*49 Beginning with tax year 1988, Lot 1.06 was divided into three separately assessed Lots, 1.06 (North Office Building), 1.07 (health club) and 1.08 (theaters). The 1987, 1988 and 1989 tax assessment information for the five upper-level parcels is shown on the exhibit attached to this opinion. A complete revaluation of all real property in Morristown was adopted for the year 1987. The common levels of assessment for Morris-town, as promulgated by the Director of the Division of Taxation pursuant to N.J.S.A. 54:l-35(b) for the years 1988 and 1989 are 115.28% and 95.95%, respectively, and the 1988 and 1989 tax rates are $1.67 and $1.74, respectively.
I.
Taxpayers filed complaints contesting the 1987 assessments on the five upper-level parcels of the project on August 14, 1987. On September 29, 1987, the developer and the taxing district agreed to amend the 1979 tax abatement agreement to include the upper-level parcels, effective for tax year 1988. Taxpayers’ contest of the 1987 assessments was settled by the parties agreeing that the total of the five assessments would be reduced from $105,970,800 to $100,000,000. The settlement was included as a separate paragraph in the 1987 amendment of the 1979 tax abatement agreement. This settlement was placed on the record before the Tax Court in January 1988 and, pursuant thereto, Tax Court judgments of dismissal evidencing withdrawal of taxpayers’ complaints contesting the 1987 assessments on Lots 1.04 and 1.06 and judgments reducing the 1987 assessments on Lots 1.01, 1.03 and 1.05 were entered on January 27, 1988.
The 1987 settlement agreement is silent concerning the application of the Freeze Act for 1988 or 1989. The 1987 amendment of the 1979 tax abatement agreement provided for an annual service charge of $1,500,000 in lieu of local property tax on the five upper-level parcels for the years 1988 through 1992. Pursuant to the 1987 tax abatement agreement, all five parcels were placed on the tax exempt list for 1988.
*50 Thereafter, on September 19, 1988, this court decided Morns Tp. v. LF Associates, 10 N.J.Tax 240 (Tax Ct.1988), granting Morris Township’s motion for partial summary judgment and holding that the Town of Morristown was without authority to amend the original financial agreement to grant tax exemption to the five upper-level parcels. The Morris Tp. v. LF Associates case was to proceed on the issue of valuation for the year 1988.
An interlocutory motion for leave to appeal the court’s September 19, 1988 decision was denied by the Appellate Division on December 13, 1988. On May 16, 1989, the Supreme Court denied an interlocutory motion for leave to appeal.
Only Morris Township filed complaints contesting the 1988 exemptions granted on Lots 1.01, 1.03, 1.04, 1.05, 1.06, 1.07 and 1.08. Complaints contesting the 1989 assessments on these lots have now been filed only by taxpayers and Morristown.
In July 1989, taxpayers moved for application of the Freeze Act to the 1988 assessments on Lots 1.04 and 1.05 and to the 1988 and 1989 assessments on Lots 1.06, 1.07 and 1.08. No Freeze Act motions were made for Lots 1.01 and 1.03. Taxing district opposed the motions on the ground that application of the Freeze Act would be inconsistent with the 1987 settlement and also because it alleged that there had been a change in the value of Lots 1.06, 1.07 and 1.08. At the argument of the motions, taxing district’s counsel had no objection to entry of a Freeze Act judgment for Lot 1.05 for the year 1988 without prejudice to his right to take the position that taxpayers are not entitled to the Freeze Act on Lots 1.04, 1.06, 1.07 and 1.08.
II.
Taxing district seeks to avoid application of the Freeze Act for 1988 and 1989 for Lots 1.06, 1.07 and 1.08, contending that there was a change in value between the October 1, 1986 assessing date for 1987 and the assessing dates for 1988 and *51 1989.[2]
N.J.S.A. 54-.51A-8 provides, in part:
Where a final judgment has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date.
Opposing affidavits indicate that physical changes were made to Lots 1.06, 1.07 and 1.08 after October 1, 1986. The court afforded taxing district an opportunity to present expert testimony on the issue of change in value of Lots 1.06, 1.07 and 1.08 so that the matter could be determined in a summary fashion.
In a summary hearing to determine whether a change in value has occurred, the burden of proof is on the taxing district. Clearview Gardens v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 330, 482 A.2d 523 (App.Div.1984). The proof in the subject case consisted of the testimony of the former assessor, who stated that the value of Lots 1.06, 1.07 and 1.08 as of October 1,1986 had been estimated by the company engaged to perform the 1987 revaluation, and that he had accepted that value and caused it to be placed on the tax records as the 1987 assessment. He testified to the physical changes that have occurred since October 1,1986 and to his opinion of the value of the property on October 1, 1987. The assessor’s appraisal of the property as of the assessing date for the 1988 year utilized the cost, market and income approaches. From these three approaches he concluded that the total value of the three parcels was $31,340,000. The 1987 assessment on Lot 1.06 was $19,853,100, and the assessments as shown on the 1988 exempt list for Lots 1.06, 1.07 and 1.08, which replaced the single 1987 assessment on Lot 1.06, totaled $32,178,200. The former assessor’s appraisal as of October 1, 1987 was reviewed by a second appraisal expert who testified that he agreed with the former assessor.
*52 Testimony was also submitted concerning the building permits and certificates of occupancy that were issued and the electrical inspections that were performed between October 1, 1986 and October 1, 1987, which indicated that during this period the health club and theaters were completed and opened for business and the shell of the office building and tenant improvements on some floors were completed. No appraisal of the value of the property as of October 1, 1986 was submitted, the taxing district relying solely on the 1987 assessment as the indicator of value as of that date.
The issue thus is whether a change in value occurred between October 1, 1986 and the assessing dates for the 1988 and 1989 tax years which would prevent application of the Freeze Act for those years. The test, as set forth in Cumberland Arms v. Burlington Tp., 10 NJ.Tax 255 (Tax Ct.1988), is two-pronged:
[I]n order for a taxing district to satisfy its burden of proof to defeat application of the Freeze Act it must first demonstrate by competent evidence that the alleged change is a result of either internal or external change that materialized subsequent to the assessment date of the base year and that the change substantially and meaningfully increased the property’s value, [at 263]
A change in zoning, a change in use, or physical changes to a property may indicate that a change in value has occurred. In the subject case, taxing district has set forth substantial proof that a physical change occurred after October 1, 1986; however, physical change alone is not proof that a substantial and meaningful change in the market value of the property has occurred. It is only an indication that there may be a change in value. There may be instances in which a change in zoning or a physical change alone is sufficient to conclude that there has been a change in value, but whether that change is substantial and meaningful can only be measured by a showing of the value of the property before and after the change. The taxing district concedes that the Headquarters Plaza project has encountered financial difficulties, that substantial vacancies exist and, at least with regard to the space leased to AT & T, that rents have decreased from 1986 to 1989. The deteriorating value of the Headquarters Plaza project was the reason the *53 parties sought tax abatement for the project in 1987. These facts are evidence that, in spite of continuing construction during the period, the project was not successful and may not have increased in value. Settlement of the 1987 cases included the agreement that no added assessments would be imposed for that year. This appears to be tacit acknowledgement by the parties that the physical changes occurring in 1987 did not add to the value of the property as assessed as of October 1, 1986. There is no testimony concerning the method of appraisal used to arrive at the 1987 assessment; there is no cost approach, income approach, or sales comparison approach in evidence valuing the property as of October 1, 1986.
The taxing district seeks to establish a change in value solely by comparing the 1987 assessment with the appraisal value testimony as of October 1, 1987. The assessment is not necessarily the value of the property. A determination of whether the assessment accurately represents the value of the property cannot be made without evidence of the assessment’s appraisal basis. A physical change does not establish a substantial and meaningful change in value which will prevent application of the Freeze Act in the absence of evidence of the value before and after the change. This is particularly so in the case of income-producing property where the physical change may or may not result in an increase in income.
I conclude from the evidence that the taxing district has not borne its burden of proving that a change in value occurred between October 1, 1986 and October 1, 1987 or between October 1, 1987 and October 1, 1988. There was no appraisal presented as of October 1, 1986 or October 1, 1988 from which changes in value from each of these dates can be deduced. Therefore, taxing district has failed to establish that the Freeze Act should not apply for 1988 or 1989 by reason of a change in value.[3]
*54 III.
The 1987 judgments on Lots 1.04 and 1.06 are judgments of dismissal, reflecting the fact that taxpayers had withdrawn the complaints contesting these assessments. Ordinarily a withdrawal will not entitle a taxpayer to an application of the Freeze Act. Union City Associates v. City of Union City, 10 N.J.Tax 581, 588 (Tax Ct.1989) (App.Div. appeal pending). However, in this case the withdrawal was a part of a settlement of the complaints contesting the assessments on the upper-level parcels of the Headquarters Plaza project, the agreement being that the total assessment of $105,970,800 would be reduced to $100,000,000 and Morristown would not impose added assessments for 1987. The withdrawal of the two complaints in connection with the reduction of three assessments indicates that all five assessments were reviewed and appropriate assessments agreed upon for all five separately-owned parcels, and there is no contention or proof to the contrary.[4]
Taxpayers seek to apply the Freeze Act to three parcels of the five-parcel settlement while reserving their right to seek a further reduction in the assessments on two of the five *55 parcels. Taxing district contends that taxpayers may not pick and choose among the five parcels, seeking Freeze Act treatment for some and reserving the right to contest others. It is well accepted that the Freeze Act will apply to a settlement. See South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 485, 457 A.2d 450 (1983); Clearview Gardens v. Parsippany-Troy Hills Tp., supra, 196 N.J.Super. at 328, 482 A.2d 523; Jack Nissim & Sons, Inc. v. Bordentown Tp., 10 NJ.Tax 464, 466 (Tax Ct.1989). Further, it has been held that the Freeze Act applies automatically, and a taxpayer has the right to seek application of the Freeze Act and also seek a further reduction in the assessment. Clearview Gardens, supra at 196 N.J.Super. 330, 482 A.2d 523. Therefore, each of the subject taxpayers has the right to decide whether to apply the Freeze Act and seek a further reduction or only apply the Freeze Act or only seek a further reduction.
The Freeze Act was enacted to avoid harassment of a taxpayer by a taxing district, Newark v. Fischer, 8 NJ. 191, 199, 84 A.2d 547 (1951), and is to be applied for the benefit of the taxpayer in the absence of an agreement to the contrary. See Curtiss Wright Corp. v. Wood-Ridge, 4 NJ.Tax 68, 80 (Tax Ct.1982). In the subject case, the settlement was silent as to the Freeze Act. Therefore, the Freeze Act automatically applies.
Taxing district argues that it never intended to be bound by the Freeze Act. However, it is not the intention of a party which governs. The Freeze Act automatically applies in the absence of a revaluation, change in value or an agreement by the parties to the contrary. The agreement that the assessment on the five upper-level parcels would be $100,000,000 for 1987 was included as the last paragraph in the September 29, 1987 amendment to the 1979 tax abatement agreement and was stipulated on the record. That portion of the 1987 amendment was not an issue in the Morris Tp. v. LF Associates case, and neither party to the Freeze Act motions seeks to set aside the settlement. The invalidation of the portion of the amendment *56 granting exemption to the five upper-level parcels does not alter the fact that for the 1987 year, as of October 1, Í986, the parties have agreed upon a value for each of the five upper-level parcels and have entered into a binding settlement. The possibility that the taxing district might have sought an agreement from taxpayers that the Freeze Act would not apply if it had known that the amendment providing tax abatement for the upper level would be invalidated does not prevent application of the Freeze Act where the taxing district does not seek to abrogate the 1987 settlement agreement and where it is unknown whether the taxpayers would have agreed to such a condition. This is so, particularly in view of the provision in the September 29,1987 settlement agreement that no added assessment would be imposed for the year 1987, indicating that physical changes made after October 1, 1986 did not change value.
IV.
Taxpayer’s motion for application of the Freeze Act to Lot 1.04 has not been opposed by the taxing district on the change-in-value ground. The 1988 assessment on Lot 1.04 is the same as the 1987 assessment, $8,503,500. A Freeze Act judgment will be entered to indicate that there has been a final disposition of the pending Tax Court complaint by Morris Township contesting the 1988 assessment on Lot 1.04.
The Clerk of the Tax Court is directed to enter judgments applying the Freeze Act to Lot 1.04 for 1988 and to Lots 1.06, 1.07 and 1.08 for 1988 and 1989. The allocation of the 1987 assessment among Lots 1.06, 1.07 and 1.08 will be as follows[5]:
[[Image here]]
*57 [[Image here]]
The case will proceed on the valuation issue for Lots 1.01 and 1.03 for 1988 and 1989 and for Lots 1.04 and 1.05 for 1989. The appraisal exchange date is April 18, 1990 and the trial will be held at 9:30 a.m. on May 9, 1990, at the Morris County Court House, South Street, Morristown.

 Counsel for Morris Township, plaintiff in the 1988 cases, was notified of the motions and joined in the letter memorandum submitted by Morristown opposing the motions.

 Taxing district does not contend that there was a change in the value of Lot 1.04.

 The taxing district has tiled complaints contesting the 1989 assessments on Lots 1.06, 1.07 and 1.08. This action by the taxing district does not bar application of the Freeze Act where the complaints, as here, are not Freeze Act *54 avoidance complaints and do not allege a change in value and the nature of the changes relied on. Cumberland Arms v. Burlington Tp., 10 N.J.Tax 255, 259 (Tax Ct.1988).

 I note that the subject case differs from Purex Corp. v. Paterson, 8 N.J.Tax 121 (Tax Ct.1986). In Purex, taxpayer had filed complaints on two parcels of property used by taxpayer as a single economic unit in its chemical manufacturing operations. Taxpayer sought to withdraw the complaint on the one parcel that the court found to be underassessed while seeking to maintain the action on the parcel that taxpayer contended was overassessed. The court, finding that the present assessments represented an inappropriate allocation, held that the taxpayer would not be permitted to withdraw the assessment on the underassessed property while pursuing its complaint contesting the overassessment. Also compare Mobil Oil Corp. v. Greenwich Tp., 9 N.J.Tax 123, 127 (Tax Ct.1986). Where improvements of a single economic unit span more than one lot, the correct assessment is based on the total value of the entire complex. In the subject case there is no allegation or proof of an inappropriate allocation of assessment among the five upper-level parcels or that the five separately-owned parcels constitute a single economic unit.

 This is the allocation made by the taxing district for the 1987 year.