CRABTREE, J.T.C.
This is a local property tax case wherein defendant contests plaintiff’s motion for freeze act relief for tax years 1986 and 1987 filed pursuant to R. 8:7(d). The motion is also tantamount to a motion to dismiss defendant’s freeze aet avoidance[1] complaint on the ground that the complaint’s allegations are insufficient as a matter of law to prevent freeze act relief.
The Tax Court proceeding for the base year of 1985 eventuated in a judgment entered pursuant to settlement whereby the parties agreed to an assessment of $24,725,000. The judgment was entered on October 26, 1988. The freeze act, N.J.S.A. 54:51A-8, permits the taxpayer, at its option to freeze the assessment at the level of the base year Tax Court judgment for the two tax years immediately following the base year, absent a revaluation of the entire taxing district or a change in value of the affected property. The freeze act may be invoked at the exclusive election of the taxpayer. Union Terminal Cold Storage v. Spence, 17 N.J. 162, 110 A.2d 110 (1954); Eckardt v. Sisler Enterprises, 1 N.J.Tax 25 (Tax Ct. 1980). It applies to judgments entered pursuant to settlement as well as judgments entered after a full hearing on the merits. *283 South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 457 A.2d 450 (1983).
While defendant was not required to file a freeze act complaint in this case, as the base year judgment was entered after the assessing dates for both freeze years, Curtiss Wright Corp. v. Wood-Ridge, 4 N.J.Tax 68 (Tax Ct.1982), it is nevertheless incumbent upon the municipality to set forth with particularity the nature of the changes in value relied upon to defeat plaintiffs motion for application of the freeze. Hudson Terrace Apartments v. Fort Lee Boro., 2 N.J.Tax 457 (Tax Ct.1981), rev’d on other grounds 191 N.J.Super. 489, 467 A.2d 1092 (App.Div.1982). The burden of proving a change in value is upon the municipality, whether the issue comes on by way of the taxpayer’s motion or by way of the municipality’s freeze avoidance complaint. Clearview Gardens v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 482 A.2d 523 (App.Div.1984); Cumberland Arms v. Burlington Tp., 10 N.J. Tax 255 (Tax Ct.1988).
This raises the question as to what type of change must occur, and to what extent must the value attributable to the change increase, to defeat the application of the freeze act. This question was answered by Judge Lario in Cumberland Arms v. Burlington Tp., supra:
■.. [I]n order for a taxing district to satisfy its burden of proof to defeat application of the Freeze Act it must first demonstrate by competent evidence that the alleged change is the result of either an internal or an external change that materialized subsequent to the assessment date of the base year and that the change substantially and meaningfully increased the property’s value, [at 263]
Three elements of proof emerge from the quoted statement of principle. First, the alleged change in value results from an internal or external change; second, the change materialized subsequent to the assessing date of the base year; and, third, the change substantially and meaningfully increased the property’s value.
The allegations of change relied upon by defendant must be evaluated with these principles in mind.
*284 Defendant alleges, first, that, at the time of the sale of the subject property from AT & T Technologies to plaintiff, approximately $3 million dollars was held in escrow to comply with New Jersey ECRA[2] requirements and that substantially all the escrowed funds have been expended since October 1, 1984, the base year assessing date, to remedy existing environmental problems, thereby substantially increasing the value of the property.
The sale of the subject property was closed on July 30, 1985; the contract of sale pursuant to which the funds in question were escrowed was executed on April 16, 1984. From this state of affairs, plaintiff argues that the expenditure of the cleanup funds after the base year assessing date is irrelevant, because plaintiffs obligation to clean up the property was imposed before the assessing date for the first freeze year. Implicit in plaintiffs argument, however, is the assumption that the amount of the ECRA expenditures mandated by the April 16, 1984 contract of sale is equivalent, dollar for dollar, to the increase in value of the property after the cleanup. The taxable value of land is not necessarily determined by simply deducting the amount of required cleanup costs from the value of unpolluted land.
Thus, defendant should have the opportunity at a plenary hearing to establish that the cleanup costs expended by plaintiff, in accordance with its contractual obligation, resulted in a substantial increase in value and that such increase materialized after the base year assessing date.
Defendant next alleges that, subsequent to the base year assessing date of October 1, 1984, the property changed from owner-occupied to income property and that numerous leases have been signed with tenants. Defendant’s allegation has merit. A change from owner-occupied to income property might represent a change in the property’s highest and best use. In this connection, for a particular use to be the highest *285 and best use for property tax purposes, such use must be legally permitted, physically possible, economically feasible and the most profitable. Ford Motor Co. v. Edison Tp., 10 N.J. Tax 153 (Tax Ct.1988). Conceivably, use of the subject property as a multi-tenanted income property is more profitable than its use as an owner-occupied property. The cases indicate that the condition of occupancy, i.e., single tenant, multi-tenanted, owner-occupied or even vacant, can make a difference in terms of value. See, e.g., Westinghouse Electric Corp. v. Bloomfield, 9 N.J. Tax 92 (Tax Ct.1985), aff’d per curiam 9 N.J. Tax 108 (App.Div.1986) and Thomas J. Lipton, Inc. v. Raritan Tp., 10 N.J. Tax 202 (Tax Ct.1988).
Accordingly, defendant should be given the opportunity to prove that a change in use, occurring after the base year assessing date, from owner-occupied to multiple tenancies substantially increased the property’s value.
Defendant’s third allegation is that a partial lease-up of the Telephone Apparatus (T/A) Building resulted in a substantial and material increase in value. As with the allegation pertaining to change from owner-occupied to a tenanted status, defendant relies upon execution of leases in a theretofore unrented, vacant building. Defendant’s argument presupposes that the more tenants there are in a building, the higher the building’s value. It is significant that defendant does not allege that improved market conditions led to the increase in tenancies. Defendant overlooks a critical aspect of the freeze act, namely, that the value to which the statute refers is value for tax purposes. As we said in Glen Pointe Assocs. v. Teaneck Tp., 10 N.J.Tax 506 (Tax Ct.1989), in dealing with the concept of an absorption period discount:
... occupancy levels, in the interests both of assessment uniformity and assessment stability, should be normalized and reflected in the vacancy allowance, which is a projection, on the valuation date, of the long-term quality and durability of the property’s income stream.... [at 516-517]
Thus, the court concludes that a mere increase in tenant occupancy unrelated to a change in market conditions does not result in the change in value contemplated by the freeze act.
*286 Defendant’s final allegation is that approximately $1 million dollars in capital improvements were expended on the property after the base year assessing date and that this resulted in a substantial and meaningful increase in value. The certification of Robert H. Scrivens, Jr., offered in support of plaintiff’s motion to apply the freeze act, indicates that plaintiff expended the total sum of $1,261,234.33 on capital improvements between June 30, 1985 and September 30, 1986. Of the total amount expended, $1,038,651.99 related to the installation of sprinkler systems in three buildings on the subject property. Such systems are exempt from local property taxation in accordance with N.J.S.A. 54:4-3.131 upon the property owner’s written application to the construction code official duly appointed by the municipality pursuant to N.J.S.A. 52:27D-126 (a provision of the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 et seq.) and the issuance by that officer of a certification that the sprinkler system is tax exempt. The exemption commences in the tax year following the year in which certification is granted. N.J.S.A. 54:4-3.133. The application for exemption was never filed.
Plaintiff argues that a right to freeze act relief cannot be dependent upon the happenstance of filing for a partial exemption, the granting of which is a purely ministerial function. Thus, plaintiff continues, compliance with the statutes governing tax exemption of sprinkler systems would have eliminated over $1 million in assessable value, leaving a minuscule capital expenditure of $222,582.34 to be added to the value of the property. That increase, plaintiff argues, falls short of the substantial, meaningful change required by the freeze act.
Plaintiff’s argument on this issue, like its argument concerning the ECRA cleanup expenditures, is flawed with the implicit assumption that cost is equivalent to value, i.e., that the expenditure of $1,261,234.33, largely upon sprinkler systems, increased the value of the property by no more than that amount, and that such increase was not substantial or meaningful.
*287 Defendant must be given the opportunity to show that sprinkler systems substantially increase the property’s value by reducing the risk of fire and lowering fire insurance premiums.
The tax exemption for sprinkler systems is unrelated to an increase in value. The exemption is available upon application to the construction code official and certification by that officer, irrespective of the value of the property. N.J.S.A. 54:4-3.133.
Accordingly, three of defendant’s contentions regarding a change in value have merit and entitle defendant to a plenary hearing. Defendant’s allegations, however, concerning the increase in tenancies in the T/A Building are insufficient as a matter of law to demonstrate a substantial change in value.
Plaintiff’s motion will be denied. The matter will be set down for a plenary hearing at an early date.
Defendant’s counsel will prepare the appropriate order and submit it pursuant to R. 4:42-1(b).

 See Union City Assoc, v. Union City, 115 N.J. 17, 556 A.2d 769 (1989).

 Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K-6 et seq.