RIMM, J.T.C.
This is a local property tax matter presently before me on remand from the Superior Court, Appellate Division. Implicated in the case is the Correction of Errors statute, N.J.SA. 54:51A-7. When the matter was previously before me, a judgment was entered on September 2, 1993, dismissing the complaint on defendant’s motion at the conclusion of plaintiffs case.
The subject property is a vacant lot located in a commercial district of the City of Somers Point, next to the Somers Point Shopping Center. It is designated as block 499, lot 14.01 on the municipal tax map. Plaintiff seeks a judgment reducing the tax assessments for the property from $1,266,300 to $588,600 for the tax years 1989,1990,1991 and 1992, alleging correctable errors by the municipal tax assessor.
The initial trial took place on August 10, 1993. At that time, plaintiff offered the testimony of one witness and had various *549 documents marked in evidence. Plaintiff also sought, through the witness, to introduce the oral statements of, and two letters from, Diane R. Hesley, the Somers Point tax assessor, indicating that a mistake had been made in the assessment of the property. On objection by defendant, the City of Somers Point, I precluded admission of that evidence, ruling that Hesley had not been the assessor during the tax years in issue and that her opinion as to whether an error had been made was irrelevant. At the close of plaintiffs evidence, I granted defendant’s motion to dismiss the complaint, resulting in the judgment of September 2,1993.
On appeal, the Appellate Division reversed the dismissal of the complaint, concluding that the evidence precluded at trial was relevant and should have been admitted. On remand from the Appellate Division, the parties agreed that the evidence and testimony from the first trial would be incorporated into the record of the second trial, that plaintiff would introduce the previously excluded evidence, and that defendant could then proceed with its defense.
At the second trial on October 2,1995, plaintiff recalled her only witness from the first trial and introduced the previously excluded evidence which was now admitted in accordance with the Appellate Division’s decision. At the close of plaintiffs case, defendant proceeded with its evidence which had not been necessary at the first trial because of the dismissal at the conclusion of plaintiffs case.
I
In 1985, Leon Freeman, plaintiffs father and predecessor in title to the subject property, obtained subdivision approval for lot 14.01, which at that time consisted of 28.14 acres. Three lots were created: a new lot 14.01 and lots 14.04 and 14.05. The size of lot 14.01 was reduced to 13.08 acres, including a sixty-foot wide access easement. The municipal tax assessor received notice of this subdivision after the tax list for the 1986 tax year had already been prepared. The 1986 tax list made no reference to lots 14.04 and 14.05 and listed lot 14.01 at its original acreage.
*550 By a deed dated May 9, 1986, and recorded on May 16, 1986, Leon Freeman transferred title to lot 14.01 to his daughter, plaintiff in this case. The recorded deed listed the acreage of lot 14.01 as 13.08 acres. Upon receipt of a copy of this deed, the municipal tax assessor changed the tax list to show the new owner of the property and notified the municipal engineer so that the tax map could be revised to reflect the subdivision. The tax list for the 1987 tax year listed the acreage for lot 14.01 as 13.08 acres and also listed the two newly subdivided lots, 14.04 and 14.05. The subdivision changes were also reflected on the municipal tax map.
In late 1986, a revaluation firm, Applied Measurement Services, performed a district-wide revaluation for the City of Somers Point. As part of its work for the municipality, the firm prepared property record cards for the subdivided lots 14.04 and 14.05. The firm also prepared a property record card for lot 14.01 which listed the lot acreage as 28.14 acres, the area of the lot prior to the subdivision. The revaluation firm developed its assessments for lots 14.01, 14.04 and 14.05 and sent them to Vital Resources Data Center where a tax list was prepared which was then forwarded to the municipality.
By a deed dated December 30, 1986 and recorded on January 12, 1987, plaintiff transferred lot 14.01 to the Jamesway Corporation and to herself. The Jamesway Corporation was to build a store on the property. In return for this transfer, plaintiff received $250,000 in cash and a note for $385,000 from the Jamesway Corporation. The deed actually contained a typographical error in the stated interests of the grantees as follows:
JAMESWAY CORPORATION, a New Jersey Corporation 40 Hartz Way, Secau-cus, New Jersey 07094 and JUDITH BRAHIN an Individual 1535 Chestnut Street Second Floor Rear, Philadelphia, PA 19102 as Tenants in Common owning respectively n and 5H2ths of the subject land.
To correct this typographical error, a “correction and confirmation deed” dated April 13, 1987 indicated the grantees and their interests as follows:
JAMESWAY CORPORATION, a New Jersey Corporation, of 40 Hartz Way, Secaucus, New Jersey 07094 and JUDITH BRAHIN an Individual of 1535 *551 Chestnut Street, Second Floor Bear, Philadelphia, PA 19102 as Tenants in Common owning respectively & and feths of the subject land.
This deed also indicated that, in accordance with the applicable statute, an abstract was sent to the assessor by the county clerk.
Sometime in January of 1987, the municipal tax assessor received a copy of the December 30, 1986 deed from plaintiff to the Jamesway Corporation. A staff person in the tax assessor’s office noted the transaction on the municipal tax list. At the second trial, a photocopy of the Real Property Tax List for 1987, page 34, was marked in evidence. The printed information disclosed that block 499, lot 14.01 contains 13.08 acres. The printed information also listed plaintiff as the owner. However, handwritten notations on the exhibit indicated “635,000 1-12-87” and crossed out plaintiffs name and replaced it with Jamesway Corp. as the owner. In fact, the exhibit discloses other similar entries for other lots indicating dates and amounts and name changes, this apparently being the system used by the assessor’s office to initially reflect transfers of title.
In February 1987, an attorney representing plaintiff sent a letter to Frederick W. Mitchell, the city’s tax assessor from 1982 to May, 1992 and during the entire period of time involved in this matter, asking whether the assessment for lot 14.01 included the sixty-foot access easement. In response, Mitchell indicated that the property tax assessment was based on the subdivision acreage (12.37 acres) plus the easement acreage (0.71 acres) or a total of 13.08 acres. Plaintiff did not question the amount of the assessment at that time. In fact, plaintiff received tax bills from the municipality for 1987, 1988, 1989, 1990, 1991 and 1992 and only questioned the assessment amount for lot 14.01 at the end of 1992. The tax bill for 1989 does not indicate area, but the tax bills for 1990,1991 and 1992 each show the correct acreage for lot 14.01 as 13.08 acres.
In 1992, Edward Iaquinto, an employee of the firm that managed plaintiffs property, noticed that some other commercial properties in Somers Point managed by his firm had been assessed at $45,000 per acre, while lot 14.01 had been assessed at *552 $97,000 per acre. At the first trial, Iaquinto explained that it was his conclusion that the $1,266,300 assessment figure for lot 14.01 had been determined by multiplying the pre-subdivision acreage of 28.14 acres by $45,000 per acre, the amount at which he believed the other properties under his firm’s management had been assessed. Iaquinto testified that despite the fact that the tax bills for the property showed the correct acreage, he still believed that the assessor had made a mistake in the assessment of the lot.
At the second trial, Iaquinto related his discussions in November 1992 with Diane R. Hesley, the municipal tax assessor who had replaced Frederick W. Mitchell. Iaquinto explained that, after discovering what he believed to be an error in the assessment for lot 14.01, he telephoned Hesley to question the assessment. Hesley listened to Iaquinto’s questions, reviewed the property record card, and decided merely from a review of the card that a mistake had been made. Hesley then sent letters to plaintiff and to Iaquinto stating that the subject property had been incorrectly assessed and indicating that she would reduce the 1993 assessment for the lot to $588,600.
At the second trial, the city presented its defense and called Mitchell as its first witness. He testified as follows on direct examination:
Q. Mr. Mitchell, during the years 1989 through 1992, that assessment, do you know the lot size on which that assessment was based?
A. Yes.
Q. And what was that?
A. 13.08 acres.
Q. Now was 13.08 acres always the lot size for the subject lot?
A. No. It had been subdivided some years prior to that.
Q. Now during the years that are at issue in this particular case, the tax years 1989 through 1992, do you — or I’m sorry — prior to these years, 1989 through 1992, do you know what the lot size was before the property was subdivided?
A. Approximately 24 acres give or take, I believe. I’m not sure—
Q. Okay.
A. —exactly. I don’t — was it 24 or 28? I’m not sure.
Q. Okay. Now in making the assessments for the years 1989 through 1992 did you ever utilize a figure of 28.14 acres in making that assessment?
A. No.
*553 Q. What acreage figure did you rely upon in making the assessment for those years?
A. 13.08.
Q. Okay. Did you rely upon any other information in placing the assessment on the books for the subject lot at $1,266,300 for the years 1989 through 1992?
A. I was relying on a deed in my possession from the Brahin organization to Jamesway Corporation, I believe, of December of 1986, which indicated a value of approximately $88,000 an acre. And I established my value of that lot for those years based on that deed.
Q. Mr. Mitchell, I’m showing you — and this is a copy of what was previously marked into evidence at the hearing on August 10,1993. Would you take a look at that and then tell me what that document is?
A. This is a deed from Judith Brahin to Jamesway Corporation and Judith Brahin, each having a percentage of interest in the property, Jamesway having a 7'i percent interest and Brahin 5'/i2.
Q. And is that the deed that you indicated that you relied upon?
A. Yes, that is.
Q. Okay. And did you — and you had that deed in your possession and had reviewed it before you set the assessments for the subject years?
A. This deed I had in my possession some time in early 1987.
Q. Mr. Mitchell, during the years 1989 through 1992 did you ever have occasion to reconsider the assessment on that property?
A. No, I never did.
Q. And why was that?
A. No question ever came up in reference to its value.
Q. And based on everything you knew, including the deed that’s been marked into evidence as D-3, were you of the opinion that $1,266,300 was a fair assessable value of that property?
A. That is correct. That was my opinion.
Q. Did you, at any point in formulating your — in formulating the assessment for the years in question, ever rely on the prior lot size of 28.14 acres?
A. No.
On redirect examination, Mr. Mitchell testified as follows:
Q. Mr. Mitchell, you testified on direct examination that this property had been subdivided. Is that correct?
A. That’s correct.
Q. And do you know when this — that subdivision took place?
A. The subdivision went into — into effect for the tax rolls for the year 1987.
*554 Q. And that subdivision would have reduced the lot size of 14.01 from 28.14 acres to 13.08 acres, is that correct?
A. That’s correct.
Q. Do you know whether — do you know whether the lot size for 14.01 changed at all from the 1986 tax list to the 1987 tax list which has been marked into evidence?
A. Yes, because I changed it.
Q. And is there also reference made in that document to an access easement?
A. Yes.
Q. And the access easement is described as being how large?
A. .71 acres.
Q. And if one adds 12.37 acres and .71 acres, one comes up with 13.08 acres, is that correct?
A. That’s correct, yes.
Q. And referencing now what was previously marked into evidence as D-6, for the next year, 1987, does 14.01 — 14.01 show up on that document, correct?
A. That’s correct.
Q. And the lot size is what?
A. 13.08.
Q. And so that would be an indication, would it not, that your office took into account the subdivision and made the change, correct?
A. Oh, absolutely, yes.
Thus, Mitchell testified that for each tax year at issue in this case, after considering the deed from plaintiff to the Jamesway Corporation, he determined that the fair assessable value of the 13.08 acres was $1,266,300.
The city also called Diane R. Hesley as a witness. In her testimony at trial, Hesley explained that she had taken her action without consulting Mitchell, the former tax assessor for the city. Additionally, Hesley acknowledged that she dealt with Iaquinto without ever having seen the deeds and other information relied on by Mitchell when he assessed the property. In fact, Hesley admitted that she had no knowledge of what was relied on by Mitchell when he made the assessments for the subject property.
*555 Hesley specifically noted that an assessor cannot tell by merely looking at an assessment figure whether or not it correctly indicates the value of the property without knowing anything about costs, sales, or income data. Hesley explained that, had she been aware of the deeds and other information relied on by Mitchell, she would not have sent the letters to plaintiff and to Iaquinto. Hesley testified that now, after reviewing the deeds and speaking with Mitchell, it was her conclusion that the former assessor had made a judgment as to value based on the deeds and other information he had available to him at the time of the assessments and that she had been wrong in assuming an error had been made based only on her review of the acreage amount listed on the property record card.
II
N.J.S.A 54:51A-7, the Correction of Errors statute, provides, in pertinent part, as follows:
The tax court may, upon the filing of a complaint at any time dining the tax year or within the next 3 tax years thereafter, by a property owner, a municipality or a county board of taxation, enter judgment to correct typographical errors, errors in transposing, and mistakes in tax assessments, provided that such complaint shall set forth the facts causing and constituting the error or errors and mistake or mistakes, or either thereof sought to be corrected and that such facts be verified by affidavits submitted by the plaintiff. The tax court shall not consider under this section any complaint relating to matters of valuation involving an assessor’s opinion or judgment____
In Hovbilt, Inc. v. Township of Howell, 138 N.J. 598, 651 A.2d 77 (1994), the New Jersey Supreme Court held that “mistakes in assessments that are indisputable, and cannot plausibly be explained on the basis of an exercise of judgment or discretion by the assessor or his or her staff, are within the category of mistakes that can be corrected under [N.J.S.A. 54:51A-7].” Id. at 618, 651 A.2d 77. Thus, from the language of the statute itself and from the standard articulated by the Supreme Court in Hovbilt, it is clear that where an assessor has formed an opinion as to the value of property, that opinion is not subject to attack under “the abbreviated and extraordinary procedures authorized by the Correction of Errors statute.” Id. at 622, 651 A.2d 77. *556 Alleged subjective errors by an assessor must go through the normal tax appeal process set forth in N.J.S.A 54:3-21. “Incorrect exercise of the assessor’s duty is remediable by timely appeal.” West Washington Realty v. Borough of Washington, 15 N.J.Tax 705, 707-708 (App.Div.1996).
In this case, plaintiff claims that there were objective and correctable errors made in the assessments for the subject property for the 1989, 1990, 1991 and 1992 tax years. Iaquinto, an employee of the firm charged with managing plaintiffs properties, compared assessments for the subject property with the assessments of other properties managed by his firm in the municipality. Iaquinto noticed that some other commercial properties in Somers Point managed by his firm had been assessed at $45,000 jper acre, while lot 14.01 had been assessed at $97,000 per acre. Iaquinto speculated that the $1,266,300 assessment figure for lot 14.01 had been determined by multiplying the pre-subdivision acreage of 28.14 acres by $45,000 per acre, the amount at which he believed the other properties under his firm’s management had been assessed.
Plaintiffs contentions are based on a comparison of her assessment with the assessments of other properties. Allowing the alleged error to be corrected in this case would completely subvert the principle established in Greenwald v. Metuchen, 1 N.J.Tax 228 (Tax 1980), that mere comparable assessments cannot be used to determine whether the assessment of a property under appeal is accurate. See also Phillips v. Township of Hamilton, 15 N.J.Tax 222 (App.Div.1995) (recognizing that mere comparable assessments are not competent evidence of value) and Borough of Rumson v. Haran, 3 N.J.Tax 590, 594 (Tax 1981) (defendant’s testimony as to comparable assessments rejected as probative of value). Cf. In re Kresege-Newark, Inc., 30 N.J.Super. 489, 499, 105 A.2d 12 (App.Div.1954) (Assessments for prior years cannot be used as a criterion of true value because if such assessments are incorrect, use of the assessments would only perpetuate the error.). Not only is that principle quite correct, but it is thorough *557 ly and completely embodied in the fabric of local property tax law in this State.
Basically, to prove her case, plaintiff offered the property record card for lot 14.01, prepared by Applied Measurement Services, which did list the pre-subdivision acreage. Plaintiff also offered Hesley's “admission” that Iaquinto’s speculation was correct. Given the testimony of both assessors, none of this is convincing to me.
Mitchell, the assessor during the tax years at issue, testified that, in assessing the subject property during each of those years, he never relied on the pre-subdivision acreage, but only valued the property based on the acreage that resulted from the subdivision. The evidence presented at trial supports that claim. Mitchell, himself, changed the tax list to reflect the subdivision. The municipal tax map was also changed. The tax bills for 1990, 1991 and 1992 listed the post-subdivision acreage for lot 14.01. Mitchell even sent a letter to plaintiffs attorney in March 1987, specifically noting that the property tax assessment for lot 14.01 was based on only 13.08 acres of land.
Mitchell also testified that he relied on the transfer of an interest in the subject property from plaintiff to the Jamesway Corporation in fixing the assessments. The evidence indicates that for the tax years at issue Mitchell did consider the transaction between plaintiff and the Jamesway Corporation. The municipal tax assessor’s office routinely receives copies of recorded deeds. In this case, a staff person in Mitchell’s office noted the transaction on the 1987 municipal tax list. I find Mitchell’s testimony regarding the tax years at issue to be credible and persuasive.
Plaintiff has argued that typographical errors in the December 30, 1986 deed made it “unintelligible” and that the deed does not support the assessor’s claim that he relied on it in making his assessments. I find that Mitchell did consider the deed in fixing the assessments. In the first place, the calculations to which Mitchell referred in his testimony indicate that he understood the division of five-twelfths and seven-twelfths intended by the December 30,1986 deed. For example, seven-twelfths of 13.08 acres *558 divided into $635,000 indicates a price of $83,225, rounded, per acre. Secondly, the assessor’s office had the corrective deed of April 13, 1987. Third, there is another deed dated May 30, 1990 by which Jamesway Corporation and plaintiff reconveyed the subject property to plaintiff. The deed states that Jamesway owns “V and plaintiff owns “feths.” This deed also states that it was sent to the assessor by the county clerk. Finally, the tax bill for 1989 is addressed to “Jamesway Corp. & Brahin, Judith.” The 1990 final tax bill is addressed to “Jamesway Corporation,” with “ & Brahin, J.” added in handwriting. The 1991 and 1992 tax bills list “Brahin, Judith” as the owner. All of the tax bills, however, were sent to 1535 Chestnut Street, Philadelphia, PA[1], which is Judith Brahin’s mailing address.
Mitchell testified that, in his opinion, relying on the correct acreage amount following the subdivision, as well as the other information available to him, $1,266,300 was the fair assessable value for the property for the 1989, 1990, 1991 and 1992 tax years. As these were the assessor’s valuation judgments, they are not subject to attack under N.J.S.A. 54:51A-7. If Mitchell’s opinions of value were faulty, and I make no finding regarding that issue, plaintiff should have challenged those value conclusions by bringing a tax appeal for each year within the time requirements of N.J.S.A. 54:3-21.
I also find Hesley’s testimony to be credible. Hesley testified that when she spoke to Iaquinto, she had no knowledge of the deed from plaintiff to the Jamesway Corporation. In fact, Hesley admitted that she had no idea what the former assessor had relied on in making the assessments for the subject property. When Hesley sent letters to plaintiff and to Iaquinto acknowledging an error, she had not consulted with Mitchell or anyone else who worked in the assessor’s office during the years at issue. She had *559 merely listened to Iaquinto’s speculation about an error and reviewed the property record card for the subject property.
As Hesley testified at trial, without knowing anything about costs, sales, or income data, one assessor cannot tell, simply by looking at an assessment number, if it correctly indicates another assessor’s opinion of the value of a piece of property. “The assessment is not necessarily the value of the property. A determination of whether the assessment accurately represents the value of the property cannot be made without evidence of the assessment’s appraisal basis.” 2nd Roc-Jersey Assocs. v. Morristown, 11 N.J.Tax 45, 53 (Tax 1990) (quoted in Union Minerals & Alloys Corp. v. Kearny, 13 N.J.Tax 114, 117 (App.Div.1992)).
I find that Hesley’s statements to Iaquinto and her letters to plaintiff and Iaquinto do not prove that a correctable error was made. What Hesley had actually done was consider other assessments, an improper basis for concluding that the subject property was incorrectly assessed.
The Correction of Errors statute is quite specific. N.J.S.A. 54:51A-7 clearly states that I cannot “consider under [that] section any complaint relating to matters of valuation involving an assessor’s opinion or judgment.” From a public policy standpoint, this makes eminently good sense. If such subjective errors were correctable, a municipality could be effectively deprived of its right to produce valuation evidence, and the timely filing requirements of our taxing statutes would become a nullity.
Actually, plaintiffs position in this case is unsupported by the law and illogical. For each year at issue before me in this case, plaintiff received a tax bill showing the correct acreage for her lot. Either she did not review the bills or she chose to ignore them until 1992. If, now, she should prevail in her claim of a correctable error, she would have effectively denied to the municipality the right to a hearing on valuation, because valuation is not an issue in a Correction of Errors ease. Simply put, plaintiff could have, and should have, filed timely appeals each year.
*560 The record in this case supports the conclusion that the assessor made a subjective determination of the assessment which is subject to attack only by a timely appeal. Three deeds were received before and during the years in issue. Changes were made in the tax lists. Tax bills were addressed to both Jamesway and Brahin. The 1987 letter to plaintiffs then attorney explained the area of the lot considered in fixing the assessment.
The assessor determined the assessable value of. the subject property after reviewing the first deed from plaintiff to Jamesway and plaintiff as tenants in common. Given all the facts, that determination cannot be challenged through the extraordinary and abbreviated procedures authorized by the Correction of Errors statute.
The explanations of both assessors show that the alleged error is, at the very least, not an indisputable mistake. I conclude that, for the tax years at issue, there were no correctable errors made in fixing the assessments for the subject property within the meaning of N.J.S.A. 54:51A-7. There is no error in the tax list relating to this property. Plaintiff merely claims that the assessment is wrong based on comparable assessments. Actually, Mitchell assessed 13.08 acres. If his assessment was wrong, it was wrong as a matter of judgment, not wrong as a correctable error, and should have been attacked by the filing of a timely appeal. As our Supreme Court has only recently stated in General Motors Corp. v. City of Linden, 143 N.J. 336, 351, 671 A.2d 560 (1996):
‘The policy of applying strict time limitations to tax matters is based upon the very nature of our administrative tax structure Throughout our tax legislation, it is clear that our legislature has attempted to set out a well organized time-table for the purpose of enabling a municipality to ascertain the amount of taxable ratables within the jurisdiction in order that it might adopt a responsible and fairly accurate budget.’
[F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 425, 495 A.2d 1313 (quoting Township of Galloway v. Petkevis, 2 N.J.Tax 85 (1980)).]
Plaintiff has not demonstrated a correctable error within the purview of N.J.S.A. 54:51A-7. Judgment will be entered in favor of defendant dismissing the complaint.

 The 1989, 1990 and 1991 tax bills indicated the zip code as 17102. The 1992 tax bill indicated the zip code correctly as 19102. There is, however, no denial that all of the tax bills were received.