ANDEEW, J.T.C.
By the present motion, plaintiff, Chevron U.S.A., Inc. seeks the entry of judgment for tax years 1986 and 1987 pursuant to N.J.S.A. 54:51A-8 (the Freeze Act). Plaintiff bases its Freeze Act application on a 1985 judgment which set the local property tax assessment of plaintiffs property at $48,153,700 in the aggregate. The property consists of 20 separately assessed parcels in Perth Amboy which in combination form the 340-acre site known as the Chevron-Perth Amboy refinery.
For tax year 1985, this court concluded that the highest and best use[1] for the subject was an asphalt plant with a 60,000-barrel per day crude oil capacity. As a consequence of that determination this court further concluded that the value of the Chevron refinery land and improvements as of October 1, 1984 for tax year 1985 was $96,888,700 and with the application of the appropriate c. 123[2] assessment ratio (49.70%), the assessment would be $48,153,700. Thus, a final judgment was entered on October 20, 1988 fixing the aggregate assessment for tax year 1985 at:
[[Image here]]
As plaintiff notes, that judgment was affirmed by the Appellate Division. 237 N.J.Super. 280, 567 A.2d 597 (App.Div. 1989). *193 Thereafter, our Supreme Court denied Perth Amboy’s petition for certification. — N.J.-, — A.2d-(1990) (February 20, 1990).
Plaintiff certifies that there has been no change in the value of its property, and that defendant taxing district has not put a revaluation into effect for either 1986 or 1987. Plaintiff now moves to apply the Freeze Act, N.J.S.A. 54:51A-8, to the 1986 and 1987 tax years based on the 1985 judgment. The taxing district resists that application.
According to the Freeze Act:
Where a final judgment has been rendered by the tax court involving real property the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where those changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for the appeal. However, the conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation for all real property within the district has been put into effect. [N.J.S.A. 54:51A-8; emphasis supplied]
The purpose of the Freeze Act was to prevent yearly increases in a taxpayer’s property tax assessment when there was no correlative change in the property value, and thus avoid costly and repetitious annual appeals by the taxpayer. Newark v. Fischer, 8 N.J. 191,199-200, 84 A.2d 547 (1951). The statute applies equally to judgments issued pursuant to settlement negotiations or a full trial on the merits. South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 457 A.2d 450 (1983).
Every township’s tax assessor is required to assess all properties in the township at their fair market value as of October 1, of the year prior to the tax year pursuant to N.J.S.A. 54:4-23. The significance of the October 1 assessing date in relation to the date “where a final judgment has been rendered” on a property tax appeal is aptly described in Clearview Gardens v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 482 A.2d 523 (App.Div.1984):
If a final judgment is rendered prior to the assessing date, the assessor should note the change for the two freeze years as well as for the year *194 adjudicated by the court. If, however, the final judgment is rendered after the assessing date, and the assessor has followed the mandate of N.J.S.A. 54:4-23, listing the properties at his highest assessed value, some action need be taken by the taxpayer to effect a change in this assessment As noted by Judge Evers, in Curtiss Wright Corp. v. Wood-Ridge [4 NJ.Tax 68 (Tax Ct.1982)], “[i]n such instances it is necessary for the property owner to affirmatively seek the application of the freeze act.” 4 NJ.Tax at 73. Once this information is brought to the assessor’s attention, the mandatory and self-executing nature of the freeze act requires the assessor to comply. The taxpayer need not submit any affidavits concerning the lack of change in value or that there has been no general revaluation. [Id. at 329, 482 A.2d 523, emphasis supplied]
In plaintiff’s case, the final judgment was issued on October 20, 1988, after the critical assessing dates of October 1, 1985 and 1986 for the tax years in question. Pursuant to the principles enunciated in Clearview, supra, some affirmative action, such as plaintiff’s present motion, was necessary to trigger the self-executing element of the Freeze Act. Thus, absent proof by defendant of a change in value or of revaluation or reassessment in the taxing district, the application of the Freeze Act is mandatory. Perth Amboy concedes that it did not implement a district-wide revaluation or reassessment for either of the tax years 1986 or 1987.
Instead, in opposition to the motion, defendant argues that plaintiff’s property has undergone a change in value sufficient to prevent the application of the Freeze Act. In order to preclude the operation of the Freeze Act, Perth Amboy would need to demonstrate that a change in value, in fact, occurred either between October 1, 1984 and October 1, 1985, the assessment dates for the base year and the first freeze year (1986) respectively, or between October 1, 1984 and October 1, 1986, the assessment dates for the base year and the second freeze year (1987), respectively. See Riverview Gardens v. North Arlington Bor., 9 N.J. 167, 173, 87 A.2d 425 (1952), and Wayne Tp. v. Robbie’s, Inc., 118 N.J.Super. 129, 133, 286 A.2d 725 (1972), certif. den. 60 N.J. 351, 289 A.2d 796 (1972).
Moreover, in seeking to avoid application of the Freeze Act, the taxing district must “specifically set forth the nature of the changes relied upon as the basis for such appeal.” N.J.S.A. *195 54:51A-8.[3] Further, any such change must be “meaningful” and attributable to something other than “the rise and/or fall of real property values in the specific market place in which the subject property is located.” Mediterannean House v. Fort Lee Bor., 7 N.J.Tax 528, 537 (Tax Ct.1985); emphasis supplied, and Inganamort Bros. v. Ft. Lee Bor., 7 N.J.Tax 564, 577 (Tax Ct.1984), aff'd 202 N.J.Super. 87, 493 A.2d 1304 (App.Div.1985).
The changes in value referred to as rendering the Freeze Act inapplicable are not limited to physical improvements in the subject property but extend as well to increases in value resulting from economic forces. See Wayne Tp. v. Robbies, Inc., supra, 118 N.J.Super. at 134-135, 286 A.2d 725 (Township permitted to present proof to defeat the freeze that “one of the world’s largest shopping centers,” had been constructed in the vicinity of the subject property, thereby causing an increase in the subject property’s value); see also Hudson Terrace Apts. v. Ft. Lee, 191 N.J.Super. 489, 467 A.2d 1092 (App.Div.1982) (Taxing district permitted to present proof of conversions of apartments to condominiums and cooperatives to prove substantial increase in value based on the demand for cooperative and condominium units). As Judge Lario of this court has succinctly stated:
[I]n order for a taxing district to satisfy its burden of proof to defeat application of the Freeze Act it must first demonstrate by competent evidence that the alleged change is the result of either an internal or an external change that materialized subsequent to the assessment date of the base year and that the change substantially and meaningfully increased the property’s value. [Cumberland Arms v. Burlington Tp., 10 N.J.Tax 255, 263 (Tax Ct.1988)]
*196 Perth Amboy does not allege that any physical internal changes occurred. Instead, Perth Amboy maintains that market factors external to the property occasioned a change in the property’s highest and best use, and thus, substantially increased the value of the property subsequent to the assessment date, October 1, 1984, of the base tax year, 1985.
Perth Amboy, relying upon the certified statements of Harold W. Bertholf, an appraiser, and Richard F. Kilgore, an economic consultant, contends that since the base-year assessment date, there has been such a substantial improvement in the economic circumstances of the petroleum refining industry in this country that the highest and best use for the Chevron-Perth Amboy refinery is as “a fully operational refinery” rather than a 60,000-barrel per day asphalt plant. Thus, as a consequence, Bertholf concludes that there was a “substantial market value increase” between the assessment date of the base year and assessment dates of the two freeze years.
The experts attribute the improvement in the United States petroleum refining industry to: (1) increased demand for petroleum products in this country, (2) an increase in refinery operating rates throughout the country, (3) a decrease in refiners’ acquisition costs of crude oil, and (4) an increase in gross margins of profitability. As a consequence of these petroleum market factors, Perth Amboy’s experts assert that the average prices paid for oil refineries that were sold subsequent to the base-year assessment date were substantially greater than the average prices paid for oil refineries sold before the base-year assessment date. These increases, according to the experts, demonstrate an increase in value of oil refineries in general and the Chevron-Perth Amboy refinery, in particular, because the highest and best use of the Chevron property has changed since the base-year assessment date.
I note from my review of the Tax Court opinion in Chevron U.S.A., Inc. v. Perth Amboy, 10 N.J.Tax 114 (Tax Ct.1988), aff’d o.b. 237 N.J.Super. 280, 567 A.2d 597 (App.Div.1989), certif. den. 121 N.J. 628, 583 A.2d 324 (1990), that this court *197 concluded that, as of the assessment date of October 1,1984 for the base tax year of 1985, the highest and best use for plaintiffs property was a 60,000-barrel per day asphalt plant and not a fully integrated 168,000-barrel per day oil refinery as asserted by Perth Amboy. The value estimate adopted by this court was predicated upon the concluded highest and best use. If that premise were to change, so also could the value conclusion, and to a substantial degree.
Perth Amboy’s claim is that there has been a change in the inherent nature of the property itself caused by external economic factors resulting in an increase in value. Plaintiff disputes that claim and has submitted certifications of two experts that support the conclusion that there has been “no identifiable, meaningful and substantial change ... in the [petroleum refinery] industry” after October 1, 1984 that would cause a significant change in the value of the Chevron-Perth Amboy refinery.
The certifications offered by the parties present genuine issues of material facts as to whether: (1) the asserted economic factors manifested themselves solely after October 1, 1984, (2) those factors caused a change in the highest and best use of the subject, and (8) the change in highest and best use effected a material change in the value of the subject property.
Thus, it is my view that Perth Amboy is entitled to a plenary hearing on these issues. That hearing is scheduled for Tuesday, July 17, 1990 at 10:00 a.m. The parties are permitted to conduct any discovery they believe necessary prior to July 7, 1990. Responsive answers to interrogatories will be provided within three weeks of receipt of the interrogatories. Depositions may be conducted up to and including July 6, 1990.

 N.J.S.A. 54:51A-6; 54:l-35a.

 Although the Freeze Act itself refers specifically to allegations of change found in the complaint, the Tax Court has held:
While a taxing district is not required to file a complaint to avoid the freeze, where a judgment final does not predate the assessment it is still incumbent upon the municipality to specifically set forth the nature of the changes in value relied upon in opposing taxpayer’s motion for application. A contrary conclusion would permit a taxing district to avoid the application of the act through the simple expedient of merely alleging such a change. [Hudson Terrace Apts. v. Fort Lee, 2 N.J.Tax 457, 463 (Tax Ct.1981)]