KUSKIN, J.T.C.
Plaintiff has moved for relief under the Freeze Act, N.J.S.A. 54:51A-8, for tax years 2000 and 2001 on the basis of a judgment entered by this court for tax year 1999. Entenmann’s Inc. v. Totowa Bor., 18 N.J.Tax 540 (Tax 2000). Defendant opposes the motion on two grounds: 1) as of the relevant assessing dates for the freeze years, the highest and best use of the subject property changed; and 2) with respect to tax year 2001, application of the Freeze Act is precluded by reason of an added assessment placed on the property during the year 2000. For the reasons set forth below, I grant plaintiffs motion.
The factual background to this matter is neither lengthy nor complex. After a trial of plaintiffs appeal of the 1999 property tax assessment on its property in Totowa (the 1998 assessment was also included in the appeal but is not relevant to this opinion), this court reduced the assessment from $11,374,000 to $7,762,700. Entenmann’s Inc., supra, 18 N.J.Tax at 564. The judgment reflecting the reduction was issued on March 17, 2000. For tax year 2000, the regular assessment on the subject property was $11,374,000, and, on October 1, 2000, the tax assessor placed an eight-month added assessment on the property. The full amount of the added assessment was $600,000, and the prorated amount for eight months was $400,000. The added assessment was based on “alterations” at the property completed during April 2000. *509 Plaintiff did not appeal the added assessment. For tax year 2001, the regular assessment was $11,974,000.
I
Does A Change In Highest And Best Use Constitute A Change In Value Under the Freeze Act
The statute governing plaintiffs application is N.J.S.A. 54:51A-8, as amended by L. 1999, c. 208, § 16, effective September 17, 1999, which provides as follows:
Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. The conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation or complete reassessment of all real property within Ihe district has been put into effect. If as of October 1 of the pretax year, the property in question has been the subject of an addition qualifying as an added assessment, a condominium or cooperative conversion, a .subdivision or a zoning change, the conclusive and binding effect of such judgment shall terminate with said pretax year.
Defendant contends that plaintiff is not entitled to relief under this statute for 2000 and 2001 because, as of the assessing dates applicable to those years, October 1, 1999 and October 1, 2000, respectively, the highest and best use of the subject property changed. In support of this contention, defendant submitted the Certification of its appraisal expert, William H. Steinhart, who testified at the trial of the 1999 appeal. In his Certification, Mr. Steinhart notes that, in the appraisal report he submitted in connection with the 1999 appeal, he indicated that a change in highest and best use was anticipated as a result of demolition of a portion of the subject building, which took place in 1999 pursuant to a building permit issued on June 14, 1999. He concludes that, if he were appraising the property for 2000-2001, he would opine to a highest and best use different from that selected in his appraisal report for 1999. The paragraphs of his Certification discussing the change in highest and best use and its impact on the property read in their entirety as follows:
*510 6. If I were to perform an appraisal report for the subject property with regard to the 2000 and 2001 lax years, I would opine a highest and best use which is different from that highest and best use I selected in my appraisal report relating to the 1998 and 1999 tax years. The highest and best use of the subject property changed during the course of the 1999 tax year from general industrial use to office/flex use. See Exhibit A [(which consists of two pages from Mr. Steinhart’s 1999 appraisal containing a discussion of highest and best use)]. Plaintiffs demolition altered my opinion of the highest and best use of the property through the actions I described in Exhibit A | (namely, obtaining site plan approval for conversion from industrial to flex space, obtaining a demolition permit, and performing the demolition)]. This change in highest and best use occurred prior to the assessing date of the 2000 tax year and after the assessing date for the 1999 tax year. To determine the nature of the change in value resulting from plaintiffs’ actions, I would gather data which are different from those I selected for my analysis of the 1999 tax year because those data were for a different highest and best use and are therefore not entirely relevant to an analysis of the 2000 tax year.
7. I would conduct the remainder of my analysis partially based upon information which came into evidence at the trial of the 1998 and 1999 matters. Specifically, the information relating to the cost to actually put the property into a physical condition to support office/flex tenants was such that the only remaining significant piece of the analysis I would need to secure would be accurate comparable rentals for such office/flex space. In that regard, I would need to review the lease on the subject property which, I have reason to believe, was entered into once the space was redeveloped. I would also search the market for office/flex data, which data would be very different from the data I selected to utilize in the 1998 and 1999 tax years.
[Certification of William H. Steinhart, May 3, 2001.]
Defendant moved for production of the lease described by Mr. Steinhart, which was entered into after October 1, 2000. Based on the following analysis, I deny the motion.
The Steinhart Certification is the only factual support submitted by defendant for its contention that it is entitled to a hearing to determine whether application of the Freeze Act is precluded by a change in value of the subject property occurring between October 1, 1998, the assessing date for the 1999 base year, and October 1, 1999 and October 1, 2000, the respective assessing dates for the freeze years. The change in value which defendant would be required to establish at a hearing has been described as follows:
[I]n order for a taxing district to defeat the two-year freeze mandated by the Freeze Act by an allegation of change in value, ... the taxing district must first demonstrate that the alleged change is the result of either an internal or an external change occurring after the base-year assessing date which substantially and meaningfully increased the property’s value. A presentation that the subject *511 property’s alleged increased value is the result solely of general inflationary trends .. fails to meet this test.
[Cumberland Arms Assocs. v. Burlington Tp., 10 N.J.Tax 255, 272 (Tax 1988) (emphasis omitted).]
The Appellate Division approved this description in AVR Realty Co. v. Cranford. Tp., 294 N.J.Super. 294, 300, 683 A.2d 235 (App.Div.1996), certif. denied, 148 N.J. 460, 690 A.2d 608 (1997) [hereinafter “AVR I”].
The Steinhart Certification states that a change in highest and best use, from general industrial use to office/flex use, occurred at the subject property as of the assessing dates for the freeze years, but the Certification contains no statement that, as of those dates, a change in the value of the subject property occurred. Presumably, defendant contends that a change in highest and best use necessarily results in a change in value because, by definition, highest and best use is the use “that results in the highest value.” Appraisal Institute, The Appraisal of Real Estate 297 (11th Ed. 1996). See Ford Motor Co. v. Edison Tp., 127 N.J. 290, 300-301, 604 A.2d 580 (1992) (citation omitted). However, a change in highest and best use is not automatically the equivalent of the substantial and meaningful change in value required to defeat application of the Freeze Act. For example, with respect to the subject property, the change in highest and best use to office/flex space may have resulted from a decline, as of the assessing dates for the freeze years, in the value of the subject property for general industrial use, so that, as of the assessing dates for the freeze years, the value of the property for office/flex use was higher than its value for general industrial use. This does not necessarily mean that the value of the property as of the assessing dates for the freeze years was higher than the property’s value for general industrial use as of the assessing date for the base year (October 1, 1998). It is only a change in value from the base year value that is significant for Freeze Act purposes. Furthermore, even if the value of the subject property changed between the base year assessing date and the freeze year assessing dates as a result of the change in highest and best use asserted in the Steinhai’t Certification, the value change may have been neither substantial nor meaningful. Because it does not *512 discuss changes in value, the Steinhart Certification does not address either of these concerns.
In opposing Freeze Act relief, the municipality has the burden of proof to demonstrate that a substantial and meaningful change in value occurred between the base year assessing date and the freeze year assessing date. Clearview Gardens Assoc. v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 330, 482 A.2d 523 (App.Div.1984). In order to obtain a plenary hearing, the municipality must make a prima facie showing of the change in value. AVR I, supra, 294 N.J.Super. at 300, 683 A.2d 235. The nature and extent of the proofs required to warrant a hearing are illustrated by the two Appellate Division decisions in AVR Realty. The first decision, AVR I, supra, 294 N.J.Super. 294, 683 A.2d 235, involved an application for Freeze Act relief for tax year 1994 in reliance on a 1993 base year judgment. 294 N.J.Super at 296-97, 683 A.2d 235. In opposing the application, the municipality submitted a certification of its assessor asserting that a change in value occurred resulting from a change in use of the subject property and from construction of 8,600 square feet of new space connected to the original building. Id. at at 301, 683 A.2d 235. The Appellate Division concluded as follows with respect to this submission:
We have no doubt that a change in use, to the extent it may significantly affect the capitalization method of assessment, the method here used, may effect a substantial and meaningful change in value. So may a substantial addition to the improvements. Nevertheless, the certification failed to show that these use and structural changes effected a change of value as of October 1,1993.

[Ibid.]

The court’s bases for its conclusion were: 1) the assessor’s certification failed to demonstrate that, as of the assessing date for the freeze year, October 1, 1993, the new construction was ready for use or the change in use had occurred; 2) no added assessment was placed on the property for the period between October 1,1993 and January 1994; and 3) the assessment on the property as of October 1, 1993 did not take into account any change in value resulting from the new construction and change in use. Id. at 301-02, 683 A.2d 235.
*513 When the assessor made the 1994 assessment as of October 1, 1993, he evidently did so in the bona fide belief that the prior assessment was still “good” vis-a-vm the true value of the property. The inference is thus inescapable that the 1994 assessment was not made on the basis of a change of value occurring after the prior assessing date. We are, therefore constrained to conclude that the opposition to the taxpayer’s Freeze Act motion was simply an after-the-fact attempt to justify the original assessment which the Tax Court had adjudged to have been too high.
[Id. at 302, 683 A.2d 235.]
Here, just as in AVR I, supra, for the first freeze year, 2000, defendant’s tax assessor simply carried forward the 1999 assessment on the subject property. For tax year 2001, the assessor appears to have carried forward the 1999 assessment and added an amount equal to the added assessment imposed for tax year 2000. Consequently, for both 2000 and 2001, the reasonable conclusion is that the assessment did not change as the result of a change in highest and best use. While the assessor’s failure to change the assessment on the subject property is not conclusive of the change-in-value issue, the failure has significance under AVR 1, supra, and casts doubt on defendant’s contentions.
The second AVR Realty decision, AVR Realty Co. v. Cranford Tp., 316 N.J.Super. 401, 720 A.2d 434 (App.Div.1998), certif. denied, 160 N.J. 476, 734 A.2d 791 (1999) (AVR II), involved AVR’s second application for Freeze Act relief, this time for tax year 1995 based on the 1993 judgment. The municipality again opposed the application. The Appellate Division quoted extensively from its first opinion and set forth the following criteria for entitlement to a hearing to establish a change in value:
In order to defeat the application for the freeze and be entitled to a plenary hearing, the municipality must allege: (1) the change in value results from an internal or external change; (2) the change materialized after the assessing date of the base year; and (3) the change substantially and meaningfully increased the value of the property.
[Id. at 407, 720 A.2d 434 (citations omitted).]
The court noted that, in support of its opposition to the EYeeze Act, the municipality submitted the certification of its assessor which stated that the value of the property “substantially and meaningfully changed and increased” between the base year assessment date and the freeze year assessing date, and set forth as the basis for this statement: a) construction of the new building; b) the change in use; and c) an approximately fifty percent increase in net operating income. The Appellate Division held *514 that this certification was “a prima facie demonstration of a change in value and should have entitled defendant to a plenary hearing to determine whether a change in value was sufficient to deflect the freeze sought by plaintiff.” Id. at 407-08, 720 A.2d 434.
The prima facie demonstration of change in value, which is a prerequisite to a plenary hearing, is also discussed by Chevron U.S.A., Inc. v. Perth Amboy City, 11 N.J.Tax 190 (Tax 1990). In that case, the municipality contended that, as a result of a change in highest and best use, there had been a substantial and meaningful change in value of the subject property between the base year assessing date and the freeze year assessing date. Id. at 196. The court noted that an appraiser on behalf of the municipality submitted a certification in which he concluded that there was a “substantial market value increase” between the two dates. Ibid. The court also noted that the defendant’s certifications asserted that the average prices paid for oil refineries increased substantially between the base year and the freeze year assessment dates and that, as a result, the value of the subject refinery increased because of the change in highest and best use. Ibid. Based on that showing, the court found “genuine issues of material facts as to whether: (1) the asserted economic factors manifested themselves solely after October 1, 1984 [(the base year assessment date)], (2) those factors caused a change in the highest and best use of the subject, and (3) the change in highest and best use effected a material change in the value of the subject property.” Id. at 197. See also Union Minerals and Alloys Corp. v. Town of Kearny, 11 N.J.Tax 280 (Tax 1990), (concluding that a plenary hearing was required on the issue of change of value where submissions by the defendant municipality asserted substantial increases in value).
The only certification submitted by defendant in support of its opposition to the Freeze Act was the Steinhart Certification, which, in contrast the municipalities’ submissions in AVR II case and in Chevron USA and Union Minerals, contains no opinion that a change in value occurred. The Certification describes a change in highest and best use, but does not relate that change to a change in value. As discussed above, a change in highest and *515 best use is not equivalent to a change in value for Freeze Act purposes.
The Steinhart Certification states that, if a hearing is granted, Mr. Steinhart will then research the market and attempt to find data to “determine the nature of the change in value resulting from plaintiffs actions.” In this connection, he asserts that access to the lease agreement entered into after the second freeze year assessing date would be important to his research. Mr. Steinhart and defendant have reversed the appropriate procedure. In order to be entitled to a hearing in opposition to a Freeze Act application, the municipality must first demonstrate, prima, facie, that a substantial and meaningful change in value has occurred. It cannot simply assert that, upon completion of additional market research, it might be able to establish that the value of the property for office/flex use is substantially and meaningfully greater than its value for general industrial use and that the “nature” of this change will be substantial and meaningful so as to defeat application of the Freeze Act. The research should be performed before filing papers in opposition to the Freeze Act motion, not after. A hearing is warranted only if the municipality provides the court with grounds for concluding, on a preliminary basis, that a substantial and meaningful change in value has occurred. Discovery is warranted only if a hearing is necessary. See Chevron U.S.A., Inc., supra, 11 N.J. Tax at 197. Defendant supports its demand for a hearing by asserting a change in highest and best use without presenting any prima facie proofs that a substantial and meaningful change in value occurred. To grant a hearing or discovery on the basis of what amounts to nothing more than a bald, unsupported allegation of a change in value would be wholly inconsistent with the rulings of the Appellate Division and the Tax Court discussed above.
II
What Is The Meaning of “An Addition Qualifying As An Added Assessment”
With respect to the second freeze year, 2001, defendant, in addition to its change in value contentions, asserts that the Freeze *516 Act does not apply because the property was the subject of an added assessment for the year 2000. Defendant relies on the 1999 amendment to N.J.S.A. 54:51A-8, which included the provision that, “if as of October 1 of the pretax year, the property in question has been the subject of an addition qualifying as an added assessment ..., the conclusive and binding effect of ... [the base year] judgment shall terminate with said pretax year.” No court has interpreted the phrase “an addition qualifying as an added assessment.” The legislative history of the statutory amendment provides little guidance. The specific language was included in the amendment when first introduced on February 23, 1998 as Senate Bill No. 673, and appears to have emanated from a recommendation by the Supreme Court Committee on the Tax Court. The report of the Committee provides no illumination as to the meaning of the language.
In interpreting the phrase “an addition qualifying as an added assessment,” the court must give due regard to public policy behind the Freeze Act. The Act is self-executing and provides important protection against annual harassment by tax assessors of taxpayers who have gone to the trouble and expense of appeals reducing their tax assessments. AVR I, supra, 294 N.J.Super, at 298-301, 683 A.2d 235. In light of the public policy considerations applicable to the Freeze Act, statutory language automatically terminating the protection afforded by the Act should be construed narrowly in the absence of legislative intent to the contrary. Legislative history suggesting a broad construction of the language is absent, and the statute itself suggests the appropriateness of a narrow construction. In designating the events, other than “an addition qualifying as an added assessment,” which automatically result in the loss of Freeze Act protection, namely, a condominium or cooperative conversion, a subdivision or zoning change, N.J.S.A. 54:51A-8, the Legislature indicated an intent to limit automatic termination to those events which result in a strong likelihood that a substantial and meaningful change in value occurred.
Based on the preceding discussion, the statutoiy reference to “an addition qualifying as an added assessment” should be inter *517 preted as part of the effort by the Legislature to define precisely and narrowly the types of added assessments which will result in automatic termination of Freeze Act protection. The statutory amendment incorporating this language in N.J.S.A. 54:51A-8 could have been drafted to refer to a property which “has been the subject of an added assessment” or a property which “has been the subject of an addition or improvement qualifying as an added assessment.” Either phrasing would indicate a direct relationship between the events resulting in the automatic termination of Freeze Act protection and those events which warrant the imposition of an added assessment under N.J.S.A. 54:4-63.2 or -63.3. Under each of those statutory provisions, an added assessment may be imposed “when any parcel of real property contains any building or other structure which has been erected, added to or improved ....” By using the phrase “an addition qualifying as” (N.J.S.A. 54:51A-8), the Legislature defined the events resulting in automatic Freeze Act termination less broadly than all events which would warrant an added assessment.
Words used in a statute which are not specifically defined are to “be given their generally accepted meaning.” N.J.S.A. 1:1-1. The relevant dictionary definition of the term “addition” is “a part added (as to a building or residential section).” Webster’s Collegiate Dictionary 13 (10th ed. 1996). The relevant definition of the term “improvement” is “something that enhances value.... ” Id. at 585. “Improve” is defined as “to enhance in value or quality ... to increase the value of (land or property) by making it more useful for humans (as by cultivation or the erection of buildings).” Ibid.
These definitions indicate that the word “addition” has a narrower meaning than “improvement” or “improve,” and, therefore, I construe the phrase “an addition qualifying as an added assessment” as referring only to the construction or erection of a new building or the expansion of an existing building, and not to all changes which would qualify as improvements for added assessment purposes under N.J.S.A. 54:4-63.2 and -63.3. This construction recognizes the importance of Freeze Act protection, while effectuating the Legislature’s decision to terminate that *518 protection under circumstances, where it is very likely that a substantial and meaningful change in value occurred. Those circumstances do not include the “improving” of real property because an improvement does not necessarily result in a strong likelihood of a substantial and meaningful change in value. The term “improvement” can cover items ranging from a replacement of broken windows, to replacement of a boiler or roof, to renovation of an entire building. Cf Parker v. Wulstein, 48 N.J.Eq. 94, 21 A. 623 (Ch. 1891), where, in the context of interpreting a lease which provided that all “improvements of the building” belonged to the landlord, the court defined “improvements” as follows: “The word ‘improvement’ may be said to comprehend everything that tends to add to the value or convenience of a building, or a place of business, whether it be a store, manufacturing establishment, warehouse, or farming premises. It certainly includes repairs of every description.” Id at 96, 21 A. 623. An improvement, therefore, may or may not result in a substantial and meaningful change in the value of a property. It is reasonable and logical to interpret the Legislature’s use of the phrase “an addition .qualifying as an added assessment” as reflecting a determination that many of the physical changes encompassed by the term “improvement” or “improve” may not substantially and meaningfully affect value, and, consequently: 1) an improvement (as opposed to an addition) should not result in automatic termination of Freeze Act protection, and 2) as to “improvements,” a municipality can avoid the Freeze Act only by demonstrating a substantial and meaningful change in value.
Defendant has failed to carry its burden to demonstrate that “an addition qualifying as an added assessment,” as defined above, occurred at the subject property, and, therefore, has failed to demonstrate that the Freeze Act is not applicable for tax year 2001. The Steinhart Certification refers to a “demolition” which allegedly altered the highest and best use of the subject property. Nowhere in the Certification is there any description of erection or expansion of a building at the subject property in tax year 2000 which resulted in the added assessment. Defendant’s assessor described the basis for the assessment as “alterations.” Defen *519 dant provided no clarification or amplification of this description. Consequently, defendant has failed to make even a prima facie showing that “an addition qualifying as an added assessment” was in place at the subject property as of October 1, 2000.
Ill
What Is The Significance Of Plaintiffs Failure To Appeal The 2000 Added Assessment
Plaintiff did not appeal the added assessment imposed during 2000. The possible explanations for this failure to appeal, none of which have been presented to the court, include, but are not limited to, 1) plaintiffs agreement that the amount of the added assessment fairly reflected an increment to value of the subject property, 2) plaintiff’s decision that the incremental taxes resulting from the added assessment did not warrant the costs of an appeal, and 8) mere inadvertence. With this broad spectrum of explanations, the absence of an appeal does not warrant an inference that the property was the subject of “an addition qualifying as an added assessment.”
Also because of the spectrum of explanations, plaintiffs failure to appeal the added assessment does not warrant an inference that a change in the value of the subject property occurred between October 1, 1998 and October 1, 2000. Under certain circumstances, failure to appeal an added assessment, in itself, may support a conclusion that the municipality is entitled to a hearing-on the issue of change in value under the Freeze Act. Here, however, defendant has provided no explanation of the added assessment, and the Steinhart Certification makes no reference to the added assessment as evidencing that a change in value occurred as of October 1, 2000. Plaintiffs failure to appeal does not compensate for defendant’s failure to present any proofs that the “alterations” which were the basis for the added assessment resulted in a substantial and meaningful change in the value of the subject property. Cf. United States Postal Serv. v. Town of Kearny, 19 N.J.Tax 282 (Tax 2001) (holding that failure to appeal *520 an added assessment did not preclude application of the Freeze Act where the added assessment was improperly imposed).
Defendant has not provided the court with any basis to evaluate defendant’s contention that the “alterations” which resulted in the added assessment caused a change in value sufficient to necessitate a hearing. Although it appears that the increase in the 2001 assessment is equivalent to the added assessment imposed for 2000, defendant presented no evidence to establish that relationship, and has provided no other support for the assessment increase. Without additional evidence, an approximately five percent increase in the 2001 assessment does not demonstrate prima facie that a substantial and meaningful change in the value of the subject property occurred between the base year assessment date and the assessment date for the 2001 freeze year.
IV
What Is The Impact Of The Change In Freeze Act Avoidance Procedure Under The 1999 Amendment To N.J.S.A. 54:51A-8
In New Rock Inv. Partners v. Elizabeth, 18 N.J.Tax 207 (Tax 1999), this court held that, where an added assessment had been imposed for the first freeze year and not appealed, the regular assessment for the second freeze year, which incorporated the amount of the added assessment, was subject to the Freeze Act in the absence of the filing of a Freeze Act avoidance complaint by the defendant municipality. That case was decided before the effective date of the 1999 amendment to N.J.S.A. 54:51A-8, which, in addition to the changes discussed above, deleted from this section the language requiring a municipality to file a complaint specifying the nature of the changes relied upon as the basis for avoiding the Freeze Act. Ij. 1999, c. 28, § 16. I construe this deletion as relieving the municipality of the obligation to file a Freeze Act avoidance complaint when the base year judgment has been entered before the assessment date for the freeze year, as previously required under the decisions in A VR I, supra, 294 N.J.Super, at 299, 683 A.2d 235, and Clearview *521 Gardens Assocs., supra 196 N.J.Super. at 329, 482 A.2d 528 The holding of New Rock, supra, therefore, would not be applicable to preclude defendant from resisting plaintiffs Freeze Act application for the tax year 2001 even without the filing of a Freeze Act avoidance complaint. The change in statutory procedure, however, does not alter the defendant’s burden to make a prima facie showing in order to obtain a hearing on a claim of change in value.
There remains the issue of whether the added assessment imposed during tax year 2000 should be taken into account in applying the Freeze Act to tax year 2001. Under the principles set forth in New Rock, supra, the freeze would be applied without regard to an added assessment imposed for a previous year. I conclude that those principles remain applicable even though the municipality is no longer required to file a Freeze Act avoidance complaint. Here, the assessment for tax year 2001 was a regular assessment, and defendant retained the burden of establishing that a substantial and meaningful change in value occurred between October 1, 1998 (the base year assessing date) and October 1, 2000 (the assessing date for 2001) in order to defeat application of the Freeze Act for 2001. Defendant offered no explanation for the increase in the assessment, and, as discussed above, presented no prima facie proofs of change in value. Speculation by the court as to what the assessor may have been thinking in setting the 2001 assessment is unreliable, uninformative and unnecessary. The Freeze Act, therefore, should apply to tax year 2001 in the normal manner, that is, to reduce the freeze year assessment to the base year judgment amount.
V
Conclusion
Based on the preceding analysis, I conclude that the regular assessment on the subject property should be reduced under the Freeze Act for each of the years 2000 and 2001 to the total amount of $7,762,700, allocated $8,539,900 to land and $4,222,800 to improvements. The added assessment imposed for 2000 is unaffect *522 ed by this application of the Freeze Act. Rockaway 80 Assocs. v. Rockaway Tp., 15 N.J.Tax 326, 332-35 (Tax 1996).